**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| ROBERT C. WEDDINGTON, | |
| Plaintiff, | |
| v. | Civil Action No.:  PX-22-243 |
| WARDEN JEFF NINES,<br>NORTH BRANCH CORR. INST.,<br>YESCARE, CORP.,[1]<br>HOLLY HOOVER, CRNP, | |
| Defendants. | |

**MEMORANDUM OPINION**

Robert C. Weddington, an inmate at North Branch Correctional Institution ("NBCI"), has filed suit pursuant to 42 U.S.C. § 1983, alleging he has been denied appropriate medical treatment for a longstanding eye condition.  ECF No. 4.  Defendant "Medical Department," has filed notice with the Court that this case is automatically stayed as to "Tehun Care Services, Inc. d/b/a/ Corizon Health, Inc," pursuant to 11 U.S.C. § 362, while Corizon is in bankruptcy proceedings.  ECF No. 24.  Defendants Warden Jeff Nines, NBCI, and nurse Holly Hoover have moved to dismiss the claims or in the alternative for summary judgment in their favor.  ECF Nos. 17, 20.  The Court notified Weddington of his right to respond to the motions, but he has failed to do so.  ECF Nos. 18, 21.  Accordingly, the Court considers the motions ripe and capable of resolution without a hearing.  *See* Loc. R. 105.6 (D. Md. 2021).   For the reasons stated below, Defendants' motions are GRANTED.

---

[1] The Clerk shall be directed to amend the docket to reflect the full and correct names of Defendants YesCare and Holly Hoover and Corizon.  ECF No. 24.

I.      **Background**

In 2016, while held at Baltimore County Detention Center, Weddington injured his eye playing basketball.  Since Weddington has been incarcerated at NBCI, he suffers from long term effects of the injury, to include loss of vision in his left eye, sharp pains in his head, ringing in his ears, fluid retention in his eyes, and a loss of equilibrium.  ECF No. 4 at 2-3.  Medical records reflect that a nurse had examined Weddington when he entered the custody of the Division of Correction on September 3, 2019.  ECF No. 17-2 3, ¶ 6, ECF No. 17-3 at 73.  His vision at the time was measured as 20/20 in both eyes.  *Id*.  Weddington complained that he could not see clearly out of his left eye due to fluid build-up; that his sick call slips had gone unanswered; and that his administrative remedy procedure complaint ("ARP") had been improperly dismissed.  ECF No. 4 at 3.

Weddington next saw a healthcare provider on September 11, 2019, for complaints of neck pain and left eye vision loss.  ECF No. 17-2 at 3, ¶ 7, ECF No. 17-3 at 87-89.  At that visit, Weddington reported that vision in his left eye has been blurry since 2016.  *Id*.  On examination, Weddington's vision was confirmed as 20/20 but, oddly, he was unable to read letters with his left eye.  *Id*.  Weddington was referred to optometry for evaluation and treatment.  *Id*.

On September 24, 2019, Weddington saw the optometrist, and reported pain in his left eye. ECF No. 17-2 at 3, ¶ 8, ECF No. 17-3 at 203.  Weddington told the optometrist that in 2016, he had suffered a corneal abrasion to his left eye.  *Id*.  The optometrist diagnosed Weddington with "recurrent corneal erosion of left eye with decreased visual acuity" and prescribed an antibiotic ointment.  *Id*.  Additionally, the optometrist referred Weddington to an ophthalmologist for evaluation of the "large corneal erosion of left eye with decreased visual acuity of light perception and pain."  *Id*., ECF No. 17-3 at 180.

Ophthalmologist Michael Summerfield examined Weddington on November 20, 2019. ECF No. 17-2 at 4, ¶ 10 ECF No. 17-3 at 204.  Upon examination, Dr. Summerfield concluded that Weddington has 20/20 vision in his right eye, but 20/200 in his left.  However, the doctor did note Weddington's demonstrated a lack of cooperation and "poor effort" during the examination. *Id*.  Dr. Summerfield ultimately concluded that Weddington's "anterior left eye" was normal.  *Id*.

Next, during a medical visit on December 20, 2019, Weddington complained to nurse Michael Kleptich that he had been prescribed the "wrong" eye drops.  ECF No. 17-2 at 5, ¶ 13, ECF No. 17-3 at 105-106.  Kleptich referred Weddington to a provider for evaluation and treatment.  *Id*.

Kleptich again saw Weddington again on January 17, 2020, for eye pain.  ECF No. 17-2 at 5, ¶ 14, ECF No. 17-3 at 107-108.  Kleptich examined Weddington's eye, which appeared normal. *Id*.  Weddington complained that he still gets "exudate in his eye when he wakes up" and that his eye still hurts.  *Id*.

On March 26, 2020, Hoover informed Weddington in writing that he has been prescribed ibuprofen and follow up testing.[2]  ECF No. 17-2 at 5, ¶ 16, ECF No. 17-3 at 111-113.  Weddington next saw nurse Ugochukwu Ekwonye on August 16, 2020, complaining that his left eye was swollen.  ECF No. 17-2 at 6, ¶ 18, ECF No. 17-3 at 116.  To Ekwonye, Weddington appeared to be in acute distress, so the nurse notified prison physician, Dr. Asreshegn Getachew, who directed nurse practitioner, Janette Clark, to examine Weddington.  Based on that examination, Clark told Weddington to apply cold and warm compresses until the prescription for Maxitrol and artificial tears arrived.  *Id*.  Clark also advised Weddington to elevate his head by "bundling clothes and putting [them] under [his] mattress."  *Id*.  Last, Clark requested that Weddington be examined at

---

[2] The COVID-19 pandemic had prevented in-person visits.

the onsite ophthalmology clinic.  *Id*.  In the interim, Weddington's antibiotic ointment prescription was renewed.  ECF No. 17-2 at 7, ¶ 20, ECF No. 17-3 at 126.

Weddington was next seen on May 17, 2021, for complaints of arm pain following a COVID-19 vaccine.  The examining physician noted that Weddington's eyes appeared normal and there were no reported vision changes.  ECF No. 17-2 at 8, ¶ 24, ECF No. 17-3 at 20-23.

On August 4, 2021, Weddington saw an optometrist for his left eye complaints.  ECF No. 17-2 at 9, ¶ 27, ECF No. 17-3 at 181.  Weddington reported that "junk" builds up in his eye and blurs his vision.  He also voiced his belief that wearing glasses damages eyes.  *Id*.  The optometrist prescribed erythromycin ointment and Muro-128 drops for recurrent left-eye corneal erosion and requested an ophthalmology consult.  *Id*. ECF No. 17-3 at 180.

On August 20, 2021, Weddington was seen by ophthalmologist, Amy Green-Simms.  ECF No. 17-2 at 9, ¶ 28, ECF No. 17-3 at 182.  Weddington told Dr. Green-Simms that "a finger went into his left eye" during a basketball game in 2016.  Dr. Green-Simms concluded a "likely recurrent erosion after trauma" and issued a 120-day prescription for Muro-128 drops at bedtime.  *Id*.  She noted that "the vision in his left eye did not match the exam and questioned whether there was refractive error."  *Id*.

On August 27, 2021, nurse Darla Cowden examined Weddington in response to his complaint of "periorbital pain to [his] left eye."  ECF No. 17-2 at 9, ¶ 29, ECF No. 17-3 at 36-37.  Weddington had communicated his belief that a "piece of bone" is aggravating his "orbital socket area." ECF No. 4 at 3.  On September 7, 2021, Weddington's eye was x-rayed, which showed "no evidence of an acute fracture, dislocation, or subluxation" or any other abnormality.  ECF No. 17-3 at 184.

On September 14, 2021, Weddington saw nurse Ernest Massalla, again complaining of left eye pain radiating to his head.  ECF No. 17-2 at 10, ¶ 32, ECF No. 17-3 at 43-44.  Massalla said Weddington would be referred to a provider.  Weddington became upset and left the examination room.  *Id*.

On December 10, 2021, Dr. Green-Simms examined Weddington again.  ECF No. 17-2 at 11-12, ¶ 36, ECF No. 17-3 at 189.  At this visit, Weddington complained of headaches and said that his left eye was sore, painful, red, and hard to open.  *Id*.  He stated that this occurred approximately two to three times a month.  *Id*.  Weddington's assessment remained the same; that Weddington was suffering from recurrent corneal erosion of the left eye.  *Id*.  Dr. Green-Simms again prescribed Muro-128 but increased the frequency to two to three times daily and antibiotic ointment as needed.  *Id*.  She recommended that Weddington return in one year for a follow-up visit.  *Id*.

On December 20, 2021, Dr. Getachew prescribed a 90-day course of Sodium Chloride 5% solution for Weddington's left eye.  ECF No. 17-2 at 12, ¶ 37, ECF No. 17-3 at 54-55.  Six days later, nurse Jessica Coffman examined Weddington after he complained of sharp pains shooting across his head, soreness in his eyes, ringing, vibrations, and flutters in his ears, pressure in his head, visual changes, and a left eye infection.  ECF No. 17-2 at 12, ¶ 38, ECF No. 17-3 at 59-60.  During this appointment, Weddington stated that he had seen multiple eye doctors, the medication was not working, and "nothing was being done."  *Id*.  Weddington was referred to a provider.  *Id*.

Weddington also suffers from diabetes and has been enrolled in the prison chronic care clinic since November 2, 2020.  ECF No. 17-2 at 7, ¶ 21, ECF No. 17-3 at 132-134.  On November 17, 2021, Weddington met with Dr. Getachew via telemedicine regarding his "poorly controlled diabetes."  Dr. Getachew informed Weddington he should be taking insulin, Metformin, and

Glucotrol to bring his diabetes under control.  Weddington became angry at the suggestion.  *Id*. at

11, ¶ 34, ECF No. 17-3 at 47-48.  Weddington's diabetes remained concerning but still he refused

suggested treatment.  *Id*. at ¶ 35, ECF No. 17-3 at 49-51.  He also denied that his uncontrolled

diabetes could be contributing to his eye problems.  *Id*. at 8, ¶ 24, ECF No. 17-3 at 22-23.

## II.      Standard of Review

Defendants Nines and NBCI move to dismiss the Complaint for failure to state a claim

pursuant to Federal Rule of Civil Procedure 12(b)(6).  In reviewing the motion, the Court accepts

the well-pleaded allegations as true and in the light most favorable to the plaintiff.  *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007).  "However, conclusory statements or a 'formulaic recitation

of the elements of a cause of action will not [suffice].'"  *EEOC v. Performance Food Grp., Inc.*,

16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555).  "Factual allegations

must be enough to raise a right to relief above a speculative level."  *Twombly*, 550 U.S. at 555.

"'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint

to cross 'the line between possibility and plausibility of entitlement to relief.'"  *Francis v.*

*Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

Although pro se pleadings are construed generously to allow for the development of a

potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), courts cannot ignore a clear

failure to allege facts setting forth a cognizable claim.  *See Weller v. Dep't of Soc. Servs.*, 901 F.2d

387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view

such pro se complaints does not transform the court into an advocate.  Only those questions which

are squarely presented to a court may properly be addressed.") (internal citation omitted)).  "A

court considering a motion to dismiss can choose to begin by identifying pleadings that, because

they are not more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 665 (2009).

Defendants YesCare and Hoover move to dismiss the claims or for summary judgment to be granted in their favor. Such motions implicate the court's discretion under Rule 12(d). *See Kensington Vol. Fire Dep't., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Court maintains "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Wells-Bey v. Kopp*, No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.)). YesCare and Hoover's motion placed Weddington on notice that the Court may construe the pleading as one for summary judgment. This Court also notified Weddington of his right to respond, which evidently, he declined. Accordingly, the Court will construe the motion as one for summary judgment.

Pursuant to Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

### III.   Analysis

#### A.  NBCI

Because NBCI is not an entity capable of being sued for a constitutional violation, the Court must dismiss the claims against it. 42 U.S.C. § 1983, provides that "[e]very *person* who, under color of [law] subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983 (emphasis added). Neither the State, nor its agencies or officials acting within their official capacities, can be sued under § 1983 because they are not "persons" under § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989). *See* Md. Code Ann., State Gov't § 8-201(b)(16) (identifying the DPSCS as a department of the Maryland state government); Md. Code Ann., Corr. Servs. § 2-201(1) (identifying the DOC as a unit within the DPSCS).

Moreover, even if somehow the prison could be construed as a person capable of being sued, it would be immune from suit pursuant to the Eleventh Amendment to the United States Constitution. The Eleventh Amendment protects a state, its agencies, and departments from citizen suits in federal court absent waiver, consent or Congressional action. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The State of Maryland has not waived such

immunity for claims brought pursuant to § 1983.  Accordingly, NBCI is immune from suit.   The claim must be dismissed.

### B. Nines

The claim against Nines is based on the bare averment that he "controls everything with medical." ECF No. 4 at 3.   Additionally, Nines is also faulted for dismissing Weddington's ARP. *Id*.   Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation.   It is well established that the doctrine of respondeat superior does not apply in § 1983 claims.  *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).   Nothing in the Complaint makes plausible that Nines participated in Weddington's course of care.   Nor does Nines' denial of Weddington's ARP, without more, amount to personal participation in the medical care provided.   The claim against Nines is dismissed.

### C. YesCare and Hoover

Turning to the claims against YesCare and Hoover, the Complaint avers that the Defendants provided constitutionally substandard medical care, in violation of Weddington's Eighth Amendment right to be free from "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To succeed in the claim, Weddington must demonstrate that each defendant's acts or omissions amounted to deliberate indifference to his serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it."  *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999).   "[T]he Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences."  *Grayson*, 195 F.3d at 695-96; *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (describing the applicable standard as an "exacting").

Deliberate indifference specifically requires the plaintiff to show that objectively, he was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A "serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Iko*, 535 F.3d at 241 (internal quotation marks and ellipses omitted).

Proof of an objectively serious medical condition, however, does not end the inquiry.  The plaintiff must also demonstrate that defendant exhibited "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839–40.  "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997).  "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

The Court assumes, without deciding, that Weddington's corneal abrasion constitutes a serious medical need.  But no evidence exists from which a rational factfinder could conclude that Defendant Hoover ignored these needs with deliberate indifference.  Hoover had minimal contact with Weddington, and no evidence suggests her course of care had been substandard.

As for YesCare, Weddington has failed adduce any evidence of institutional liability arising from an unconstitutional custom, habit or practice that YesCare had implemented at the prison.  Municipalities are "included among those persons to whom § 1983 applies if the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance,

regulation, or decision officially adopted and promulgated by that body's officers.*" Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  Such liability has been extended to private entities operating under color of state law, including private prison health care providers.  *See, e.g., Rodriguez v. Smithfield Packing Co., Inc.*, 338 F.3d 348, 355 (4th Cir. 2003); *Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 728 (4th Cir. 1999).   Accordingly, a medical provider may be held liable if the corporation performs functions otherwise reserved for a state actor and carries out those functions pursuant to a "custom, policy, or practice" that "violate[s] a plaintiff's constitutional rights." *Owens v. Balt. City State's Atty's Offc.*, 767 F.3d 379, 402 (4th Cir. 2014); see Monell, 436 U.S. 658.  Weddington has made no such showing. Thus, this Court grants summary judgment in favor of YesCare and Hoover.

## IV.    Conclusion

For the foregoing reasons, the claims against Defendants Nines and NBCI are dismissed. Defendant Nines is dismissed without prejudice and NBCI with prejudice.  The Court grants summary judgment in favor of Defendants Hoover and YesCare.  The Court administratively closes the case as to Corizon, pending notice from Weddington or Corizon that the automatic stay has been lifted.

A separate Order follows.

| | |
|---|---|
| 6/30/23 | /S/ |
| Date | Paula Xinis<br>United States District Judge |